UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALOMAR HEALTH,<br><br>           Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and MORGAN JACKSON,<br><br>           Defendants. | Case No.: 3:21-cv-00490-BEN-BGS<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>[ECF Nos. 17, 18, 32] |

## I.      INTRODUCTION

Plaintiff Palomar Health ("Palomar") brings this action against Defendants American Guarantee and Liability Insurance Company ("AGLIC") and Morgan Jackson ("Jackson") ("Defendant(s)") alleging (1) breach of contract by AGLIC; (2) seeking declaratory judgment against AGLIC; (3) breach of duty of good faith and fair dealing by AGLIC; and (4) negligent misrepresentation by both AGLIC and Jackson.  ECF No. 8.

Before the Court are Defendants' Motions to Dismiss (the "Motion(s)"). ECF Nos. 17, 18.  The motions were submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.

ECF No. 25. After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** Defendants' Motions to Dismiss.[1]

## II.    BACKGROUND[2]

This matter arises from a dispute regarding coverage of an insurance policy between Palomar and AGLIC. Like many California industries, Palomar was impacted by the myriad COVID-19 related orders issued by the State of California and County of San Diego.[3] The orders most relevant to this case are state order N-33-20 (mandating the healthcare delivery system to prioritize services to serving those who are the sickest and prioritizing resources, including personal protective equipment (PPE), for the providers providing direct care to them) and county orders requiring hospitals and health care providers to take measures to preserve and prioritize resources, including delaying non-emergent or elective surgeries when feasible as well as barring all "non-essential personnel" from hospitals or long-term care facilities. FAC, ECF No. 5, ¶¶ 100-103.

As a result of these orders, Palomar avers that shifting towards testing and treating COVID-19 patients and postponing many of their other non-emergent services such as elective surgeries amounted to a "direct physical loss of and/or damage to its property, its interest in Personal Property, and its interest in buildings (or structures)" resulting in financial loss that should be covered by Palomar's insurance agreement ("the Policies")[4] with AGLIC. *Id.* at ¶¶ 110-1116. AGLIC's position is that neither the above-mentioned orders nor the presence of COVID-19 on the premises amounts to "direct physical loss of or damages caused by a Covered Cause of Loss" to Palomar's

---

[1] Palomar also filed a Motion to Strike Defendant's Notice of Supplemental Authority. The Court did not rely on any of the supplemental authority in making its decision in this case; Plaintiff's motion is denied as moot.
[2] The Court is not making factual findings.
[3] For a more complete history of California's COVID-19 stay home orders, *see South Bay United Pentecostal Church v. Newsom*, __ F.3d __, 2021 WL 222814 *1-5 (9th Cir. Jan. 22, 2021).
[4] Palomar and AGLIC had policies that ran from July 1, 2019 – July 1, 2020 and July 1, 2020 – July 1, 2021. These policies are identical and the disputed claims arise under both.

property. MTD, ECF No. 18, 1. Palomar and AGLIC also dispute the coverage afforded for "Interruption by Communicable Disease" ("ICD"). Palomar claims the presence of COVID-19 triggers this provision, while AGLIC responds it only applies if Palomar is prohibited from accessing the insured locations by order of governmental authority. *Id.*

Palomar's claim against Jackson, an employee of AGLIC, is based on the view that Jackson made false representations to Palomar about the Policy and its coverage. FAC, ECF No. 5, 33. Jackson disputes this Court's personal jurisdiction over her as part of this claim (she is a Texas resident who seemingly only has interacted with any entity in the State of California as part of adjudicating Palomar's claim under the Policies by direction of her employer, AGLIC). MTD, ECF No. 17, 6. Jackson also responds to Palomar's claims by asserting she cannot be held personally liable for acts taken on AGLIC's behalf. *Id.* at 15.

## III. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Jackson moves this Court to dismiss the sole claim against her for lack of personal jurisdiction. "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). Once a defendant files a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("FRCP"), the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012); *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011). In general, the court may exercise personal jurisdiction over an out-of-state defendant consistent with both the forum state's long-arm statute and constitutional due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm statute is coextensive with the requirements of constitutional due process. *Id.*

Where, as here, the motion is based on written materials and affidavits rather than an evidentiary hearing, a plaintiff is only required to make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). A "prima facie" showing means that the plaintiff need only demonstrate facts that, if true, would support jurisdiction over the defendant. *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016).

In determining whether a plaintiff has met his burden, "uncontroverted allegations in the complaint must be taken as true," and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1108 (9th Cir. 2002). However, "'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP,* 476 F.3d 756, 766 (9th Cir. 2007). Further, although a complaint may plead personal jurisdiction over a defendant, to the extent the defendant moves to dismiss by filing affidavits or declarations refuting the jurisdictional allegations in a complaint, the plaintiff may not rest on those allegations and must support them with the plaintiff's own affidavits or evidence. *See, e.g.*, *Data Disc. v. Systems Tech. Association, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (holding that a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit"); *see also Matter of Am. River Transp. Co. LLC*, No. CV 18-2186, 2021 WL 1295017, at *2 (E.D. La. Apr. 7, 2021) (providing that "[t]he allegations of the complaint, except as controverted by opposing affidavits, are taken as true and all factual conflicts are resolved in the plaintiff's favor") (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). There are two ways to establish personal jurisdiction: general and specific. *Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir. 1986).

**B. Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

AGLIC moves to dismiss any claims regarding closure of Palomar's gift shop for

lack of subject matter jurisdiction due to the claim not being ripe. Rule 12(b)(1) allows a defendant to seek dismissal of a claim or lawsuit by asserting the defense of lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). If the Court, after review of motion to dismiss brought pursuant to Rule 12(b)(1), or at any other time during a lawsuit, determines "that it lacks subject matter-jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008).

"Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction." *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871 (S.D. Cal. 2019). "As a result, the plaintiff bears the burden of proving that the case is properly in federal court." *Id.*; *see also DRAM*, 546 F.3d at 984 ("The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction."). To state a claim for relief invoking a federal court's subject-matter jurisdiction, a pleading must allege "a short and plain statement of the grounds for the court's jurisdiction." FED. R. CIV. P. 8(a)(1). The allegations of subject matter jurisdiction must plead facts, rather than mere legal conclusions, establishing a plausible basis for federal subject matter jurisdiction. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Where a defendant seeks dismissal of a case pursuant to Rule 12(b)(1), the "jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the moving party asserts that, even assuming the truth of the plaintiff's allegations, "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In a factual attack, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court has no obligation to draw unreasonable inferences when determining whether the pleading under attack states a plausible claim. *See, e.g., Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 20-CV-01858-EMC, 2020 WL 4923697, at *3 (N.D. Cal. Aug. 21, 2020), *motion to certify appeal denied,* No. 20-CV-01858-EMC, 2020 WL 7227153 (N.D. Cal. Dec. 8, 2020) ("When a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*."). If a defendant advances "a factual attack on subject matter jurisdiction, the defendant may introduce testimony, affidavits, or other evidence to dispute the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (internal quotations omitted). "Under these circumstances, 'no presumptive truthfulness attaches to plaintiff's allegations.'" *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039.

C. **Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted**

Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Under Rule 12(b)(6), a court may dismiss a complaint when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 679 (2009) (holding that a claim must be facially plausible to survive a motion to dismiss).

The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). When ruling on a motion to dismiss, courts accept a plaintiff's well-pleaded factual allegations as true and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts are not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach*, 896 F.2d at 1555, n.19. Under the incorporation by reference doctrine, however, the court may also consider documents either (1) attached to the complaint, *Hal Roach*, 896 F.2d at 1555, n.19, or (2) "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The Court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If a court decides to grant a motion to dismiss, it must also decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

D. **California Insurance Law**

As federal jurisdiction in this action is based on diversity of citizenship, California substantive law governs. *Stanford Univ. Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir. 1999); *Humboldt Bank v. Gulf Ins. Co.*, 323 F. Supp. 2d 1027, 1032 (N.D. Cal. 2004). In California, the interpretation of an insurance policy is a question of law for the court. *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377 (2005). Such interpretation must give effect to "the mutual intention of the parties at the time the contract is formed ...." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). To determine the intent of the parties behind an insurance contract, the Court "look[s] first to the language of the contract in order to ascertain its plain meaning," reading the language in its "ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* (internal citations and quotation marks omitted). When a term is ambiguous, it should be liberally interpreted to protect the insured's reasonable expectation of coverage. *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal.4th 27 (1994). But "[i]f [the] contractual language is clear and explicit, it governs." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal.4th 315, 321 (2010). After all, "[a]n insurance company can choose which risks it will insure and which it will not, and coverage limitations set forth in a policy will be respected." *Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*, 66 Cal.App.4th 1080, 1086 (1998) (citing *Legarra v. Federated Mutual Ins. Co.*, 35 Cal.App.4th 1472 (1995)).

IV. **DISCUSSION**

  a. *Jackson's Motion to Dismiss for Lack of Personal Jurisdiction*

Morgan Jackson is a resident of Texas. She has not consented to this Court's jurisdiction. She does not own any California property or have any other assets or businesses in California. She is an employee of AGLIC and has been a Texas resident throughout her employment. She was served the Summons and Complaint in this case in Texas. MTD, ECF No. 17, 10-11.

"Where, as here, no federal statute authorizes personal jurisdiction, the district

court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citations omitted). California's long-arm statute permits its courts to exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." *Daimler AG v. Bauman*, 571 U.S. 717, 125 (2014) (quoting Cal. Civ. Proc. Code § 410.10). Thus, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," and the Court must ensure that its assertion of personal jurisdiction over a party comports with the limits imposed by federal due process. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 464 (1985)).  The traditional bases of personal jurisdiction that comport with due process are service while physically present in the forum, domicile, or consent.  None of the traditional bases of jurisdiction are present here.  Absent the traditional bases, a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

      Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).  In their response to Jackson's Motion to Dismiss, Palomar only asserts specific jurisdiction for this Court over Jackson.  Thus, this Court only addresses the issue of specific jurisdiction.  Specific jurisdiction exists "when a case 'aris[es] out of or relate[s] to the defendant's contacts with the forum.' " *Martinez*, 764 F.3d at 1066 (quoting *Helicopteros*, 466 U.S. at 414 n.8); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) ("In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.' " (emphasis in original)); *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

      The Ninth Circuit uses a three-part test to determine whether a defendant's

contacts with the forum state are sufficient to subject it to specific jurisdiction:

>  (1)  The non-resident defendant must purposefully direct their activities or consummate some transaction with the forum or resident thereof, or perform some act by which they purposefully avail themselves of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
>  (2)  The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
>  (3)  The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.,* it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). The Supreme Court has emphasized that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State" itself, not with persons who reside there. *Walden*, 134 S. Ct. at 1123-26. The plaintiff has the burden of proving the first two prongs and, if met, the burden shifts to the defendant to "set forth a compelling case" as to the third. *Picot*, 780 F.3d at 1212.

> i. <u>Jackson did not purposely avail herself of the privilege of doing business in California.</u>

Although often conflated, purposeful direction and purposeful availment remain two distinguishable concepts. *Schwarzenegger* 374 F.3d at 802. Purposeful availment is most frequently analyzed in suits evincing a defendant's actions within the forum (such as contracts), while purposeful direction utilizes evidence of a defendant's actions outside the forum state but directed at the forum (such as distribution or advertising) in order to demonstrate the defendant purposefully directed his conduct. *Id*. Purposeful direction analysis relates more to suits involving torts. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998).

In this case, Palomar's claim against Jackson is based on negligent misrepresentation. FAC, ECF No. 8, 33. Both Palomar and Jackson, in arguing the

subject motion, focus their analysis on purposeful direction and the *Calder* effects test. However, the Ninth Circuit has found this test is limited to claims of intentional tort. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007). Because Palomar's claim against Jackson is based in negligence, this Court applies the "purposeful availment" framework, which asks whether a defendant has "deliberately engaged in significant activities within a State" such that it "has availed [it]self of the privilege of conducting business there." *Burger King Corp.* 471 U.S. at 476 (1985).

      The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted). A defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988)). In determining whether such contacts exist, we consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King,* 471 U.S. at 479.

      Applying this standard, this Court concludes Palomar cannot show Jackson has sufficient minimum contacts with California to subject her to jurisdiction there. Jackson was the claims adjuster assigned by AGLIC to handle the Palomar claim. While Palomar is in California, it allegedly was AGLIC's decision to assign the case to Jackson. There is no allegation that Jackson was conducting her own business in California. Jackson was no more than an instrument of AGLIC's business being conducted in California. This Court rejects Palomar's argument that Jackson availed herself of the benefits and protections of the California Insurance Code. MTD Opp'n, ECF No. 21, 14. Under Section 14022(a) of the code, out-of-state, unlicensed adjusters can adjust in California under direction of a licensed adjuster. Based on the pleadings, it appears AGLIC, and not Jackson, benefited from this part of the code and it was AGLIC that was able to assign the Palomar case to Jackson. But for the code provision, Jackson ostensibly would have

been assigned to another case and AGLIC would have found a California licensed adjustor to handle Palomar's claims. This Court is not convinced Jackson deliberately engaged in significant activities within a state when her activities were limited to doing the work assigned to her by her employer.

The only link between Jackson and California is Palomar. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over [them]." *Walden* at 285; *see also Burger King* at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"). By her own declaration, which Palomar does not dispute, Jackson never entered the State of California in adjusting the claim or interacted with any other California entities. Jackson Decl. ¶¶22-25. A defendant's one-time business interaction with a plaintiff that is unrelated to the plaintiff's forum is generally insufficient to establish sufficient minimum contacts in the plaintiff's state necessary for personal jurisdiction. *See generally*, *Morrill v. Scott Financial Corporation*, 873 F.3d 1136 (9th Cir. 2017); *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008)

This Court is also unconvinced by Palomar's argument that its status as a public health district alters this calculus. First, Palomar's status as a public health district does not heighten Jackson's connection with the State of California. See *Johnson v. San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692, 699 (1990); *See also First Interstate Bank v. State of California*, 197 Cal. App. 3d 627, 633–34, 243 Cal. Rptr. 8, 11 (Ct. App. 1987) The fact that a state agency is created by statute to discharge a duty constitutionally imposed on the state does not transmute the agency into "the state," nor render the state liable for its acts under a general theory of respondeat superior. *Union Trust Co. v. State of California* 154 Cal. 716, 728–729 (1908); *Gonzales v. State of California,* 29 Cal.App.3d 585, 590 (1972). The authority of an agency like a school district to act is

measured by the authority statutorily conferred upon its governing board. An agency may not act on behalf of the state, nor may the state perform a task delegated to the agency, unless statutorily authorized to do so. *Id.* at 591. This Court rejects Palomar's claims that "Palomar literally *is* the State of California."[5] MTD Opp'n, ECF No. 21, 7 (emphasis in original).

There appears to be no connection between Jackson and the State of California beyond her interactions with Palomar about its insurance claim. But for AGLIC assigning Jackson to the case, she has no ties to the State of California. Moreover, any effects of alleged wrongdoing are solely felt by Palomar. As Palomar has failed to meet its burden under the first prong of the *Picot* test, no further analysis is needed.

Accordingly, Jackson's motion to dismiss for lack of personal jurisdiction is **GRANTED**. Jackson's additional motion to dismiss for failure to state a claim is **DENIED AS MOOT**.

      b. <u>Palomar's Breach of Contract and Declaratory Judgment Claims Against AGLIC</u>

Normally, a motion to dismiss does not lead to a decision on the merits. However, when the claim is one for breach of contract and the terms are clear and explicit, a claim may be resolved on the merits at the motion to dismiss stage. "Where contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further." *Ticor Title Ins. Co. v. Employer's Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1995). In such situations, "[a] court may resolve contractual claims on a motion to dismiss" because "the terms of the contract are unambiguous." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 878-79 (N.D. Cal. 2018)

---

[5] Moreover, this Court finds Palomar's argument particularly self-defeating in light of the rest of its claims. Palomar seeks to recover based on the state's order directing health care providers to prioritize COVID-19. If Palomar literally is the State of California, and the State of California issued the orders that shut down their ability to use their hospitals as they see fit, Palomar is essentially asking AGLIC to compensate a state agency based on closure decisions made by the state.

(citing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000)). This is the case with Palomar's contract claim.

Palomar alleges AGLIC breached the parties' contract by failing to pay claims covered under the following portions of the Policies: Time Element, Interruption by Communicable Disease, Decontamination Costs, Protection and Preservation of Property, Civil or Military Authority, Protection of Patients, and Professional Fees. FAC ECF No. 8, 28-29. All but the Interruption by Communicable Disease and Professional Fees claims require "direct physical loss or damage caused by Covered Cause of Loss." Dec'l, ECF No. 18-2, Ex. 1-2. AGLIC argues that the presence of COVID-19 on Palomar's properties or state orders limiting the use of their property do not amount to "physical loss or damage." MTD, ECF No. 18, 19. Moreover, AGLIC cites to the fact that the Policies specifically exclude the term "virus" from its Covered Cause of Losses. *Id.* at 24. Palomar counters the presence of COVID-19 and the state and county orders resulted in their losing "interest" in the property. Moreover, Palomar asserts an addendum in the Policies for Louisiana that removed the word "virus" from coverage exclusions removes it from the rest of Policies, even though Palomar has no Louisiana property under the Policies. FAC, ECF No. 8 ¶ 40.

### i. "Covered Cause of Loss"

The Policies define "Covered Cause of Loss" as "[a]ll risks of direct physical loss of or damage from any cause unless excluded." Policies, §7.11, ECF No. 18-2, 130. Several district courts in California have dealt with similar COVID-19 related insurance claims. In *Unmasked Management, Inc. v. Century-National Insurance Co.*, 3:20-CV-01129-H-MDD, --- F. Supp. 3d ----, 2021 WL 242979 (S.D. Cal. Jan. 22, 2021), appeal filed, No. 21-55090 (9th Cir. Feb. 5, 2021), California restaurant owners argued that orders closing their dining rooms during the pandemic amounted to a physical loss or damage under their insurance policy. *Id.* at 4. Applying California contract law, the court interpreted the "physical loss or damage" provision to require a "distinct, demonstrable, physical altercation" to the property. *Id.* They ultimately held temporary

loss of the ordinary use of their properties did not satisfy this condition. *Id.* at 4-6. As the court recognized in *Unmasked*:

> Plaintiffs are not the first to contend that their temporary and partial loss of use or functionality of their property resulting from the Closure Orders and the COVID-19 pandemic constitutes a "direct physical loss of or damage to" that property. Courts applying California law have all but universally rejected these attempts as lacking the requisite "distinct, demonstrable, physical alteration" necessary to show physical loss or damage. *See, e.g., Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, No. CV 20-3619 PSG [495 F. Supp. 3d 848, 852–55], 2020 WL 6156584, at *4-5 (C.D. Cal. Oct. 19, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST [487 F.Supp.3d 834, 838–42], 2020 WL 5525171, at *3-5 (N.D. Cal. Sept. 14, 2020); *Pappy's Barber Shops, Inc. v. Farmers Grp.*, Inc., No. 20-CV-907-CAB-BLM [487 F.Supp.3d 937, 942–44], 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020); *10E*, 483 F. Supp. 3d at 835–37.

*Id.*

Under California law, "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal.App.4th 766, 115 Cal. Rptr. 3d 27, 38 (2010) (citation omitted). In other words, "some external force must have acted upon the insured property to cause a physical change in the condition of the property, i.e., [the property] must have been 'damaged' within the common understanding of that term." *Id.*

Palomar's claims essentially mirror those previously rejected almost universally by California courts. Undaunted, Palomar contends that the Policies are broader here than in other cases and focus on the "all risks" and "any causes" portions of the Covered Cause of Loss definition. Opp'n, ECF No. 22, 7. Even assuming Palomar is correct in that its coverage is somehow broader, the risks referenced are risks of the types of physical damage or loss described above. The presence of the SARS-COV-2 virus on the covered property cannot realistically be viewed as a risk to the physical integrity of the structures.

Palomar also claims it lost its "interest in" the covered properties due to the state

and county orders. Opp'n, ECF No. 22, 12. The argument is unconvincing. Palomar's buildings did not suffer physical damage and they still had access to, and were able to operate in, the facilities. Courts applying California law have concluded this does not amount to a loss of use or "interest in" the property. *See, e.g.*, *Pappy's Barber Shops v. Farmers Group, Inc.*, 487 F.Supp.3d 937 (S.D. Cal 2020). Palomar's argument that this Court's decision in *Bols* (2021 WL 268609 (S.D. Cal 2021)) is instructive is not persuasive. *Bols* was a Constitutional claim, not a contractual dispute, and the "interests" discussed in *Bols* are not the same as those implicated here. Moreover, Section 3.03.02.01 of the Policies specifically exclude coverage for "loss or damage arising from delay, loss of market, or loss of use." ECF No. 18-2, 260. Palomar did not lose its "interest in" the covered property.

Also unconvincing are Palomar's claims that the use of PPE to treat COVID-19 patients amounts to a loss of its personal property. ECF No. 22, 9-10. Under Palomar's theory, policies such as those in dispute in this case would subject insurers to paying for all equipment used and discarded in keeping facilities clean to prevent the spread of diseases. The language of the Policies does not support this interpretation.

### ii.  Breach of Contract Claims

This Court now applies its interpretation of "direct physical loss of or damage caused by a Covered Cause of Loss" to Palomar's breach of contract claims. Of the portions of the Policies of which Palomar claims AGLIC is in breach, the following sections have damage provisions: Section 4.01 (Time Element – "must be due to direct physical loss of or damage to Property"), Section 5.02.07 (Decontamination Costs – "if Covered Property is [c]ontaminated from direct physical loss of or damage caused by Covered Cause of Loss"), Section 5.02.24 (Protection and Preservation of Property – "actual or imminent physical loss or damage due to a Covered Cause of Loss"), and Section 5.02.37 (Protection of Patients – "necessary due to impending, physical loss or damage to a Covered Cause of Loss"). As discussed above, the presence of the SARS-COV-2 virus and COVID-19 patients does not constitute direct physical loss of or

damage to Palomar's property. Nor does the presence of the virus or patients constitute a risk of damage or physical loss.

Palomar also seeks indemnification under Section 5.02.03 (Civil or Military Authority) of the Policies. Applying the plain language of the Policies, this claim fails, too. Section 5.02.03 of the Policies states, "[AGLIC] will pay for the actual Time Element loss sustained by [Palomar], as provided by this Policy, resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of civil authority's response to direct physical loss or damage caused by a Covered Cause of Loss to a [nearby property not belonging to the Insured] located within the distance of the Insured's location." ECF No. 18-2, 101. While Palomar's assertions they were forced to suspend certain health related services is noted, such a suspension does not fit under this provision of the Policies. The civil orders in this case were public health orders relating to treatment priority. To recover under this portion of the Policies, the civil orders would have had to have mandated a suspension of operations due to destruction of property nearby that affected Palomar's ability to carry out its business functions. Palomar omits allegations of facts that would support recovery under this portion of the Policies.

Palomar's claim for indemnification under the Interruption by Communicable Disease coverage also fails. Under Section 5.02.35 of the Policies, coverage for suspension of Palomar's business activities is to be reimbursed only if "such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, *prohibiting access* to those portions of the [l]ocation." ECF No. 18-2, 114 (emphasis added). Here, Palomar does not assert they were prohibited by government order from entering their facility. The only portion of the facility that was closed was the gift shop, a claim which AGLIC is still adjusting with Palomar. ECF No. 18-2, 14.

Palomar's claim under Section 5.02.23 (Professional Fees) also fails. That provision applies to costs "resulting from loss or damage payable under this Policy." Since Palomar is not entitled to any damages under the provisions of the Policies of

1  which Palomar alleges AGLIC to be in breach, Palomar is not entitled to reimbursement
2  for any of the fees paid under this section. Palomar does not posit facts in its complaint
3  that support a claim under this section of the Policies.

4      Palomar's FAC fails to state a claim for breach of contract as to any of the
5  aforementioned sections of the Policies. In reaching this determination, this Court need
6  not address the disputed language regarding virus contamination exclusion, as the plain
7  language of the Policies bars coverage even before considering Palomar's unorthodox
8  argument that a Louisiana addendum to the Policies applies in California.

            iii.    <u>Dismissal and Leave to Amend</u>

10      Palomar's breach of contract claims are dismissed for failure to state a claim upon
11  which relief can be granted. Accordingly, Palomar's claim for declaratory judgment
12  under Count II of the FAC is dismissed as well. Based on this Court's determination
13  regarding the meaning of "all risks of direct physical loss of or damage from any cause,"
14  this Court determines any amendment would be futile and dismisses Counts I and II with
15  prejudice.

        c.  <u>Palomar's Claim for Breach of Duty of Good Faith and Fair Dealing</u>

17      Palomar alleges a claim against AGLIC for breach of duty of good faith and fair
18  dealing regarding the handling of Palomar's claims under the Policies. Regarding this
19  claim, this Court finds the court's opinion in *Island Restaurants* instructive:

> "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Major v. W. Home Ins. Co.*, 169 Cal.App.4th 1197, 87 Cal. Rptr. 3d 556, 567 (2009), as modified on denial of reh'g (Jan. 30, 2009). "[T]o establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.' " *Id.* Here, because Plaintiffs are not "due" any benefits under the Policy's general business interruption provision, they fail to state a claim for bad faith. See *id.*; see also *Waller [v. Truck Ins. Exch., Inc.]*, 900 P.2d at 619, 639 (1995) ("It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.").

      Accordingly, the Court grants Defendant's motion for judgment on the pleadings as to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

*Island Restaurants, LP v. Affiliated FM Insurance Company*, ---F.Supp.3d----, 2021 WL 1238872 (S.D. Cal. April 2, 2021).  As determined *supra*, Palomar is not due any policy benefits under any of the challenged portions of the Policies.  Therefore, this Court grants AGLIC's motion to dismiss Count III for failure to state a claim upon which relief can be granted.  This Court finds any attempt to amend would be futile and dismisses Count III with prejudice.

      d.  <u>Palomar's Claim for Negligent Representation</u>

      Palomar claims Defendants AGLIC and Jackson made false representations to Palomar regarding coverage benefits under the terms of the Policies.[6]  AGLIC moves to dismiss on the grounds that interpretation of an insurance policy is a legal, rather than factual determination, and as a matter of law, cannot constitute negligent misrepresentation.  Applying California law, this Court agrees with AGLIC.

      "It is well settled that the interpretation of an insurance policy is a *legal* rather than a *factual* determination."  *Chatton v. National Union Fire Ins. Co.*, 10 Cal.App.4th 846, 865 (1992) (emphasis in original).  Palomar's FAC cites to misrepresentations of "coverage conditions" (FAC ¶ 129) and alleges that Palomar relied on these misrepresentations resulting in loss.  In both its FAC and Opposition to the Motion to Dismiss, Palomar frames the purported misrepresentations as factual assertions, rather than legal interpretations.  At no point does Palomar address California legal precedent that matters of insurance policy interpretation are legal rather than factual.

      Negligent misrepresentation includes the misrepresentation of a past or existing material *fact*.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal.App.4th 35, 50 (2009) (emphasis added).  On the face of the FAC and

---

[6] The claim against Jackson is dismissed for lack of personal jurisdiction, *supra*.

motion opposition, though, Palomar cites to interactions with AGLIC that purport to be interpretations of the Policies and available coverages thereunder; something that California courts determine to be matters of law. As Palomar fails to point to any statements of fact made by the Defendants, let alone any misleading statements regarding a material fact, they have failed to state a claim for negligent misrepresentation.

Moreover, based on the pleadings, it appears Palomar still pursued claims under the Policies with AGLIC, thus negating its claim that it may have detrimentally relied on the alleged misrepresentation of material fact. Palomar's disagreement with AGLIC's interpretation of the policy contract is a question of law and a breach of contract action would be the remedy (although as discussed *supra*, the breach of contract claim fails as well).

AGLIC's motion to dismiss Count IV is granted. As the Court finds the alleged statements by AGLIC are legal rather than factual, any attempt to amend would be futile. Count IV is dismissed with prejudice.

### E. CONCLUSION

For the above reasons, the Court **GRANTS** Jackson's motion to dismiss for lack of personal jurisdiction and **DENIES** her motion to dismiss for failure to state a claim upon which relief can be granted as **MOOT**. The Court **GRANTS** AGLIC's motion to dismiss any claim dealing with the gift shop for lack of subject matter jurisdiction in that the claim is not ripe. As to all remaining claims, the Court **GRANTS** AGLIC's motion to dismiss for failure to state a claim upon which relief can be granted and the claims are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

Dated: September 3, 2021

HON. ROGER T. BENITEZ
United States District Judge